UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| MUTHUKUMAR NACHIAPPAN SUBBIAH, | § § § | |
|---|---|---|
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:10-CV-115-B |
| THE UNIVERSITY OF TEXAS AT DALLAS, | § § § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION & ORDER

Before the Court is Defendant The University of Texas at Dallas' Motion to Dismiss Pursuant to Rule 12(b)(1) and (6) (doc. 62), filed February 4, 2011. For the reasons stated below, the Court finds that the Motion should be and hereby is **GRANTED** and that Plaintiff's claims should be and hereby are **DISMISSED with prejudice**.

## I.

## BACKGROUND

As previously noted, this action arises out of Plaintiff Muthukumar Nachiappan Subbiah's graduate studies and employment as a teaching assistant with the University of Texas at Dallas ("UTD"). Plaintiff was originally a graduate student and teaching assistant in UTD's International Business Program with UTD's School of Management. (Pl.'s 1st Am. Compl. 1). After approximately thirty months in the program, he took a mandatory comprehensive exam. (*Id.*). UTD subsequently informed him that he failed the exam. (Pl.'s Original Compl. 5). Four of the ten faculty members who graded Plaintiff's exam refused to reveal their grades. (Pl.'s 1st Am. Compl.

- 1 -

2). In September 2007, three months after learning that he had failed the exam, Plaintiff filed an internal grievance with the Dean of the School of Management. (Pl.'s Original Compl. 5). As a result of the grievance procedure, the grades were eventually revealed to him. (Pl.'s 1st Am. Compl. 2). Plaintiff alleges that at some point during this period, UTD forced him to transfer to the Public Administration Department in the School of Economics, Policy, and Political Science. (*Id.*).

On August 24, 2009 and November 4, 2009, Plaintiff filed an Intake Questionnaire and Charge of Discrimination, respectively, with the Equal Employment Opportunity Commission ("EEOC"), alleging that UTD and certain professors had discriminated against him on the basis of his national origin (Indian) and retaliated against him for using the internal grievance procedure. (Pl.'s Original Compl. 2-6). After receiving a right to sue letter from the EEOC, Plaintiff filed the instant case on January 22, 2010. (*Id.* at 1, 7). After the Court consolidated a parallel proceeding removed from state court,[1] Plaintiff sought and obtained leave to file an Amended Complaint (doc. 43). This First Amended Complaint either referenced or alleged violations of Title VII, Title VI, and certain state tort and contract laws. (Pl.'s 1st Am. Compl. 5-9). UTD moved to dismiss all of these claims under Rule 12(b)(6) of the Federal Rules of civil procedure, arguing that Plaintiff had failed to state a claim upon which relief could possibly be granted (doc. 51). On December 27, 2010, the Court issued its Memorandum Opinion and Order, granting Defendant's Motion to Dismiss, yet giving Plaintiff one final opportunity to amend his claims.

Plaintiff complied with the Court's Order, filing his Second Amended Complaint on January

---

[1]Plaintiff commenced a similar action against UTD in state court on March 12, 2010. (Pl.'s Original Pet. 1 (doc. 1-4), *Muthukumar v. Univ. of Tex. at Dallas*, No: 3:10-CV-1133-B). After UTD removed that case to federal court, the Court consolidated it into the instant case. (Order of Consolidation (doc. 3), *Muthukumar v. Univ. of Tex. at Dallas*, No: 3:10-CV-1133-B).

21, 2011 (doc. 61). Plaintiff realleges his claims for discrimination and retaliation under Title VII and Title VI, as well as for violations of state tort and contract law. (Pl.'s 2d Am. Compl. 5-9). He also brings new claims for purported violations of constitutional rights. (*Id.* at 9-10). Defendant has once again moved to dismiss the entirety of Plaintiff's claims (doc. 62), and Plaintiff has responded (doc. 63). UTD has not filed a Reply.

## II.

## LEGAL STANDARD

The same standard that governed UTD's First Motion to Dismiss also governs its Second Motion. Under the Federal Rules of Civil Procedure, a complaint must contain "a short, plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A plaintiff may support his claim for relief with any set of facts consistent with the allegations in the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). Rule 12(b)(6) authorizes dismissal of a complaint that fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). In analyzing a Rule 12(b)(6) motion, the Court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). Such a motion should only be granted when the complaint does not include "enough facts to state a clam to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Thus, to survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not wurvive a motion to dismiss. *Iqbal*, 129 S. Ct. at 1949. A Rule 12(b)(6) motion to dismiss "is viewed with disfavor and is rarely granted." *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009). The Court's review is limited to the allegations in the complaint and to those documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the claims. *Causey v. Sewell Cadilac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

Because Plaintiff is proceeding *pro se*, the Court liberally construes his Complaint with all possible deference. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). In addition, a *pro se* plaintiff ordinarily should be given "every opportunity" to state a possible claim for relief. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1998). Thus, before a court dismisses a complaint under Rule 12(b)(6) for failure to state a claim, a *pro se* plaintiff should be given an opportunity to amend. *Barowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam).

## III.

## ANALYSIS

UTD moves to dismiss all of Plaintiff's claims under Rule 12(b)(6). The Court examines Plaintiff's claims in the order they appear in his Second Amended Complaint, turning first to his Title VII claims, then his Title VI claims, his tort law claims, his breach of contract claim, and his constitutional claims.

A.  *Plaintiff's Title VII Claims*

As best the Court can tell, Plaintiff bases his Title VII claims wholly on four sets of retaliatory conduct: (1) UTD cutting his salary and subjecting him to verbal and psychological threats because he opposed discriminatory practices; (2) UTD not offering him a teaching assistant position in the Public Administration department; (3) UTD threatening to remove him from the University, prohibiting him from entering the University or accessing his office, forbidding him from communicating with others, and directing police officers to follow him; and (4) UTD (or more particularly, Professor Kiel) retaliating against Plaintiff after his graduation by preventing the dissertation committee members from writing letters of recommendation for him. (Pl.'s 2d Am. Compl. 5). Defendant moves to dismiss these claims, arguing that the complained of conduct is barred either because Plaintiff did not properly exhaust the claims before the EEOC or because he has failed to adequately plead them. (Def.'s Br. in Supp. of Mot. Dismiss 3-6).

In its previous Order on Defendant's first Motion to Dismiss, the Court observed that Plaintiff had to file a charge of discrimination with the EEOC within 300 days of learning of the alleged discriminatory conduct and that any conduct occurring outside of this 300 days was time-barred. (Mem. Op. & Order 5, Dec. 27, 2010 (citing *Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir. 1998); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002))). The Court concluded that Plaintiff's Intake Questionnaire, filed with the EEOC on August 24, 2009, constituted a "charge" under Title VII, and thus "any claims based on events that occurred prior to October 28, 2008 [were] time-barred." (*Id.* at 6). Neither party has offered any reason for, nor does the Court deem proper, reconsideration of this analysis. Thus, the Court is only concerned with alleged discriminatory conduct occurring on or after October 28, 2008. Plaintiff's first claim, that "[his]

salary was cut for opposing discriminatory practices" and that he was subjected to "verbal and psychological threats," is therefore precluded because this conduct was part of Plaintiff's alleged basis for filing complaints with the Provost and President of UTD in the first place, complaints which allegedly occurred well before October 2008. (*See* Pl.'s 2d Am. Compl. 2; Pl.'s Original Compl. 5; *see also* Pl.'s Sur-Reply to Def.'s Additional Args. 4-6 (doc. 21) (providing detailed discussion of the salary cut)).

Plaintiff also fails to state a claim upon which relief may be granted as to his second and fourth sets of alleged retaliatory conduct (failure to offer a teaching assistant position and preventing letters of recommendation), as he failed to properly exhaust those claims. A complaint that brings claims under Title VII is limited to those claims in a Plaintiff's initial charge before the EEOC. *Anderson v. Lewis Rail Serv. Co.*, 868 F.2d 774, 775 (5th Cir. 1989) (citing *Hoffman v. Boeing*, 596 F.2d 683, 685 (5th Cir. 1979)). This means that "the 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970). UTD contends that Plaintiff's claims that UTD "retaliated for a second time and did not offer the TA position in the PA department when I applied for it" and "retaliated for a fourth time after my graduation [when Professor Kiel] prevented other dissertation committee members from giving [Plaintiff] a letter of recommendation" fall outside the scope of his EEOC filings. (Def.'s Br. in Supp. of Mot. Dismiss 5 (quoting Pl.'s 2d Am. Compl. 5-6)). The Court agrees that neither Plaintiff's EEOC intake questionnaire nor his formal charge sufficiently address his not being offered a certain teaching assistant position or his failure to receive certain letters of recommendation. (*See* Pl.'s Original Compl. 2-6 (providing copies of Plaintiff's EEOC Intake Questionnaire & Charge of

Discrimination)).

Thus, the only remaining conduct upon which Plaintiff may base his Title VII claim is the allegation that UTD threatened to remove him from the university, prohibited him from campus, his office, and UTD students and faculty, and directed police officers to follow him. In the EEOC charge attached to Plaintiff's Original Complaint, Plaintiff alleged that "[o]n or about November 10, 2008, I was instructed not to push this issue [of the grading of Plaintiff's comprehensive exam] any further and I was threatened by one fac[ulty] that I will not be in the University if I raised this issue again." (Pl.'s Original Compl. 5). Examining this claim in light of UTD's First Motion to Dismiss, the Court held that it "solely concern[ed] Plaintiff's role as a graduate student at the university, not his being an employee" and therefore did not implicate Title VII. (Mem. Op. & Order 6-7, Dec. 27, 2010). The Court reasoned that though Plaintiff might serve dual roles as both student and employee, he could not "bring[] a claim under Title VII for 'purely academic decisions, such as the testing and qualification of doctoral students, that have only a tangential effect on one's status as an employee.'" (*Id.* at 7 (quoting *Bucklen v. Rensselaer Polytechnic Inst.*, 166 F. Supp. 2d 721, 725 (N.D.N.Y. 2001))).

In once again amending his Complaint, Plaintiff now urges that UTD "threatened to remove me from employment by explicitly saying, 'If you push this issue further you will not be in UTD.'" (Pl.'s 2d Am. Compl. 5). While this allegation is a step towards adequately pleading a Title VII claim because it at least purports to involve an employment relationship, it nevertheless still ultimately fails. First, Plaintiff once again fails to adequately plead this claim with sufficient supporting factual allegations to satisfy Rule 12(b)(6)'s pleading standards. The Court could not find any statement in any of the pleadings in this case that indicates that Plaintiff actually held a teaching

assistant position in November 2008. In fact, in his Second Amended Complaint, Plaintiff actually asserts that he was either denied a teaching assistant position in August 2008 for the fall semester in the Public Administration Department or that he was offered a position without benefits. (*See id.* at 3, 5). Either way, Plaintiff indicates that he did not accept any teaching assistant position for the Fall of 2008. (*See id.*). If Plaintiff did not hold a teaching assistant position during the Fall of 2008, UTD's alleged threat in November 2008 that he "would not be in the University" necessarily only applies to his role as a student.

Second, even if Plaintiff were to point the Court to some part of his filings that indicates that he did hold a teaching assistant position in the Fall of 2008, he nonetheless failed to adequately include that accusation in his EEOC Intake Questionnaire and Charge. Instead, as discussed above, he merely alleges that UTD threatened to remove him from the University if he continued to pursue more information on his comprehensive exam grades. (*See* Pl.'s Original Compl. 5). His EEOC Complaint deals wholly with conduct relating to his being a graduate student, never once mentioning his role as a teaching assistant. (*See id.*). While the Court views the scope of EEOC Complaint broadly, it cannot afford Plaintiff the opportunity to make one factual allegation of some sort of academic retaliation, only to later change his story to a threat to his position as a teaching assistant in order to preserve his claim. *See Steffen v. Meridien Life Ins. Co.*, 859 F.2d 534, 544-45 (7th Cir. 1988) (affirming grant of summary judgment against a Plaintiff who gave varying factual accounts in his EEOC complaint and judicial complaint).

Finally, even if the Court were to allow Plaintiff to so alter his factual allegations, Plaintiff has still failed to plead any facts indicating that UTD's conduct was anything other than a "purely academic decision" that only had a "tangential effect" on his employment as a teaching assistant.

See *Bucklen*, 166 F. Supp. 2d at 725.[2] Indeed, all of Plaintiff's factual allegations go to conduct surrounding his failed comprehensive exam—no allegation concerns his work as a teaching assistant. His losing his teaching assistant position would be merely a tangential effect stemming from his removal as a student from UTD. There is no indication from any of the facts pled in Plaintiff's Complaint that any threat by UTD or its representatives was directed separately towards Plaintiff's role as a teaching assistant. For any of these reasons, Plaintiff has failed to properly state his claim that UTD threatened to remove him from employment if he continued to question the failing grade on his comprehensive exam.

The additional allegations Plaintiff includes in his third set of discriminatory and retaliatory conduct, that UTD prohibited him from entering campus or his office, forbade him from speaking to others, and directed police officers to follow him, all similarly relate to his student activities at UTD, or at the very least fall outside the scope of his EEOC Complaint, and therefore likewise warrant dismissal. Furthermore, with respect to the police officer claims, Plaintiff has not supported his fantastical claim that UTD directed police officers to follow him sufficient evidence, instead only supporting his claim with the factual allegation that on the day of a hearing at UTD, a police car in Irving brushed up close to his car. (Pl.'s Br. in Supp. of Resp. to Def.'s 1st Mot. Dismiss 7).

Because Plaintiff has failed to adequately plead any of the above claims under Title VII, those claims are hereby **DISMISSED**.

B. *Plaintiff's Title VI Claims*

---

[2] One Texas court has gone so far as to hold that a student's simultaneous role as a teaching assistant or researcher is "completely incidental" to the student's "scholastic program," and thus is never an "employee" for purposes of Title VII. *Pollack v. Rice Univ.*, No. H-79-1539, 1982 WL 296 (S.D. Tex. Mar. 29, 1982). Because the broader view still mandates dismissal of Plaintiff's claim, the Court need not determine whether to presently embrace this more restrictive position.

Plaintiff once again brings claims under Title VI in his Second Amended Complaint, contending that UTD unlawfully discriminated and retaliated against him on the basis of his national origin. (Pl.'s 2d Am. Compl. 6-8). UTD moves to dismiss these claims, arguing that Plaintiff has once again failed to plead facts that show intentional discrimination. (Def.'s Br. in Supp. of Mot. Dismiss 6-7). In its Order on UTD's first Motion to Dismiss, the Court found that Plaintiff had failed to adequately plead his Title VI claims because Plaintiff had failed to proffer "specific allegations of acts that were taken with discriminatory intent." (Mem. Op. & Order 8, Dec. 27, 2010).

Referring to that Order, Plaintiff has now come back with several allegations he claims demonstrate that UTD intentionally discriminated against him. Again, as best the Court can tell, these claims are (1) that he received a failing grade on an exam because of discrimination; (2) that certain Chinese professors hid his grades from him; (3) that UTD did not allow him to correct or review his educational records because of intentional discrimination; (4) that UTD prevented him from retaking the exam for discriminatory reasons; (5) that one professor ridiculed him when he asked for feedback on his performance; (6) that UTD forced him to transfer from the International Business Program to the Public Administration Program for discriminatory and retaliatory reasons; (7) that Professor Kiel created a hostile academic environment in retaliation of Plaintiff's following the internal grievance procedure; and (8) that UTD threatened him and imposed harsh disciplinary action in retaliation as well. While Plaintiff has amended his claims to allege that these acts were taken because of discrimination or retaliation, he nevertheless still fails to support these claims with any specific facts that would tend to show either discriminatory or retaliatory intent.

As stated above, a complaint's "factual allegations must be enough to raise a right to relief

above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. At 1949. While a complaint need not include "detailed factual allegations," it does need "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* at 1959. Title VI of the Civil Rights Act of 1964 provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Title VI does not protect individuals from unfair decisions, but only decisions that are made with discriminatory motive or intent. *Bisong v. Univ. of Houston*, 493 F. Supp. 2d 896, 905 (S.D. Tex. 2007) (citing *Nieto v. L & H Packing Co.*, 108 F.3d 621, 624 (5th Cir. 1997)). Accordingly, in order to succeed on a Title VI claim, a plaintiff must demonstrate that a certain action upon which he seeks to recover was taken with a discriminatory motive. *Id.*

As evidenced by the eight separate purported violations of Title VI listed above, Plaintiff's Complaint is replete with acts that were allegedly taken for discriminatory or retaliatory purposes. However, fully absent from his Complaint is a single factual allegation that could demonstrate discriminatory or retaliatory intent on the part of UTD or its representatives if true. There are no racially-charged statements, no accusations that some other student received different treatment, no statements that he was the only Indian and the only person to be treated in this manner, nor any other indicator (other than his bald assertions) that the acts were taken with unlawful motives. The mere fact that Plaintiff might believe these acts were taken for discriminatory or retaliatory reasons is not enough. *See Richards v. JRK Prop. Holdings*, No. 10-10125, 2010 WL 5186675, at *1 (5th Cir. Dec. 20, 2010) (upholding dismissal of Title VII claims under Rule 12(b)(6), in part, because plaintiff

failed to provide facts that supported her mere belief that she was terminated because of her race); *Bisong*, 493 F. Supp. 2d at 904 (noting that standards for Title VI and Title VII inquiries are essentially the same, as both require a showing of discriminatory motive).

Accordingly, Plaintiff's Title VI claims are **DISMISSED** as well.

C. *Plaintiff's State Tort Law Claims*

Plaintiff once again realleges his state law tort claims of conspiracy, negligence per se, fraud by nondisclosure, intentional infliction of emotional distress, loss of consortium, and defamation per se. (Pl.'s 2d Am. Compl. 8). The Court explained in its previous Order that Plaintiff cannot bring any of these claims against UTD because it generally enjoys sovereign immunity and none of the exceptions to such immunity apply in the instant case. (Mem. Op. & Order 8-9, Dec. 27, 2010). In his Second Amended Complaint, Plaintiff attaches a discussion of why he believes sovereign immunity does not apply in this case. (*See* Pl.'s 2d Am. Compl. 8 & App. 10). However, no matter how Plaintiff attempts to reconstrue Texas sovereign immunity law, the fact remains that state agencies, like UTD, generally enjoy sovereign immunity from tort liability absent enumerated exceptions that do not apply here. *See Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 554 (Tex. 2002); *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n. 3 (Tex. 2003). Accordingly, Plaintiff's state law tort claims are once again **DISMISSED**.

D. *Plaintiff's Breach of Contract Claim*

Plaintiff also reasserts a claim for breach of contract in his Second Amended Complaint. (Pl.'s 2d Am. Compl. 8-9). UTD moves to dismiss this cause of action, arguing that it is immune from suit under the Eleventh Amendment and, alternatively, that Plaintiff fails to plead the existence of a valid contract between the parties, adequate performance by Plaintiff, how Defendant

breached the contract, or the damage suffered as a result of the breach, all requisite elements for breach of contract claim. (Def.'s Br. in Supp. of Mot. Dismiss 8). Plaintiff responds that Congress abrogated Eleventh Amendment immunity with respect to breach of contract claims when it passed Section Five of the Fourteenth Amendment, which protects against a state actor's depriving an individual of life, liberty, or property without due process of the law. (Pl.'s Br. in Supp. of Resp. 7).

The Eleventh Amendment bars suit in federal court against a state, including its agencies or departments, unless either the state consents to suit or Congress abrogates the state's immunity pursuant to a valid grant of constitutional authority. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54-55 (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). A state university, like UTD, is a state institution to which Eleventh Amendment immunity extends. *Bisong v. Univ. of Houston*, No. H-06-1815, 2006 WL 2414410, at *3 (S.D. Tex. Aug. 18, 2006) (citing *Chavez v. Arte Publico Press*, 204 F.3d 601, 603 (5th Cir. 2000)); *Moon v. Midwestern State Univ.*, No. 7:02-CV-270-R, 2004 WL 2254196, at *2 n. 1 (N.D. Tex. Oct. 6, 2004).

There is a litany of cases arising out of federal district courts that have found neither a state waiver nor a Congressional abrogation of the State of Texas' sovereign immunity with respect to a breach of contract claim. *See, e.g.*, *Vital Health Care, Inc. v. Horn*, No. M-08-142, 2008 WL 4966915, at *4 (S.D. Tex. Nov. 18, 2008); *Bisong*, 2006 WL 2414410, at *3; *Moon*, 2004 WL 2254196, at *2; *Simmons v. Texas Water Dev. Bd.*, No. A-05-CA-432 LY, 2005 WL 4440406, at *6 (W.D. Tex. July 24, 2006). The only grounds that Plaintiff offers in support of his claim that Eleventh Immunity does not apply is that Congress abrogated the protection as to breach of contract claims when it passed Section 5 of the Fourteenth Amendment. (*See* Pl.'s Br. in Supp. of Resp. 7). However, absent specific enabling legislation from Congress, Section 5 of the Fourteenth Amendment does not

abrogate Eleventh Amendment immunity. *Jagnandan v. Giles*, 538 F.2d 1166, 1185 (5th Cir. 1976). While Plaintiff cites to a one page memorandum on sovereign immunity provided in the appendix attached to his response, he does not point to any specific enabling statute that would abrogate the Eleventh Amendment. (*See* Pl.'s Br. in Supp. of Resp. 7; Pl.'s 2d Am. Compl. App. 11). In light of the multitude of cases that have found Eleventh Amendment immunity in breach of contract cases against the State of Texas, as well as Plaintiff's inability to point to any particular Congressional abrogation of that immunity, the Court finds that the State is immune from Plaintiff's breach of contract claims. Accordingly, Plaintiffs breach of contract claim is hereby **DISMISSED**, and the Court need not reach the question of whether Plaintiff has adequately pled each element of that claim.

### E. *Plaintiff's Constitutional Claims*

Plaintiff's Second Amended Complaint also contains new claims for certain constitutional violations of Plaintiff's First, Fifth, and Fourteenth Amendment rights. (Pl.'s 2d Am. Compl. 9-10). UTD moves to dismiss these claims on Eleventh Amendment immunity grounds as well. (Def.'s Br. in Supp. of Mot. Dismiss 9). The Court finds that Plaintiff's constitutional claims fail for the same reason his breach of contract claims fail—the Eleventh Amendment. Once again, Plaintiff fails to point out, nor does there exist any waiver by the Texas legislature or specific enabling statute by Congress that abrogates Eleventh Amendment immunity with respect to constitutional violations when it comes to state institutions like UTD. *See Ross v. Tex. Educ. Agency*, No. 09-20732, 2011 WL 303258, at *3 (5th Cir. Feb. 1, 2011) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)). Accordingly, Plaintiffs claims based on the First, Fifth, and Fourteenth Amendments are **DISMISSED** as well.

## IV.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is hereby **GRANTED** and all of Plaintiff's claims are **DISMISSED**. Furthermore, Plaintiffs claims are **DISMISSED with prejudice** because the Court has given him multiple opportunities to amend his Complaint to state a claim upon which relief may be granted, yet he has remained unable to do so. *See Moini v. Univ. Tex. at Austin*, No. A-10-CA-180-SS, 2011 WL 90472, at *13 (W.D. Tex. Jan. 10, 2011); *Swanson v. Aegis Commcn's Group, Inc.*, No. 3:09-CV-041-D, 2010 WL 1779664, at *1 (N.D. Tex. Apr. 29, 2010); *Maa v. Rollins-Cross*, No. 3:03-CV-2721-K, 2005 WL 81706, at *2 (N.D. Tex. Jan. 11, 2005). Under the facts Plaintiff has presented before the Court, it would be futile to allow him another opportunity to amend.

SO ORDERED.

DATED May 10, 2011

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE